IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


VILLARI BRANDES & KLINE, P.C.  :      CIVIL ACTION
                                :
       v.                  :
                                  :
PLAINFIELD SPECIALTY HOLDINGS   :
II, INC., et al.               :        NO. 09-2552


MEMORANDUM

Bartle, C.J.                                       June 26, 2009

        This is a diversity action brought by plaintiff Villari
Brandes & Kline, P.C. ("Villari"), a Pennsylvania law firm,
against defendants Plainfield Specialty Holdings II, Inc.,
Plainfield Offshore Holdings XI, Inc., and Plainfield Offshore
Holdings X, Inc. (collectively "Plainfield"),[1] Delaware
corporations.  Villari seeks damages from Plainfield for breach
of contract, fraud, tortious interference with contractual
relations, and defamation.  It also requests that we enjoin
Plainfield preliminarily and finally from adjudicating in
Michigan issues related to a referral fee agreement between
Villari and Children's Legal Services, P.L.L.C. ("CLS"), a
Michigan law firm that is not a party to this action.

        Villari and Plainfield both have ongoing disputes with
CLS.  Plainfield is proceeding against CLS in a lawsuit in

_____

1.  For simplicity, since Villari has sued all three Plainfield
entities and does not distinguish among them, we use the single
name "Plainfield" to refer to them.

federal court in Michigan, and Villari and CLS are engaged in arbitration in Pennsylvania.

Now before the court is the motion of Plainfield to dismiss the complaint for improper venue pursuant to 28 U.S.C. § 1406(a), or in the alternative to transfer venue in the interest of justice to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). The defendants have the burden to prove that a change of venue is justified.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

I.

The battle between Villari and Plainfield is inextricably connected to their respective disputes with CLS.  In order to understand the complete picture it is necessary to set forth the allegations in the lawsuit Plainfield has pending against CLS in the Eastern District of Michigan and those in the arbitration between Villari and CLS, which is proceeding in Pennsylvania.

The parties appear to be in agreement about many of the background facts underlying this action.  Villari is a Pennsylvania law firm specializing in the representation of plaintiffs with medical malpractice claims arising out of birth injuries.  CLS is a Michigan law firm owned and operated by Kenneth Stern ("Stern").  CLS owns and uses the trademark "4MyChild" in television and website advertising to find clients with meritorious medical malpractice cases based on birth

-2-

injuries.  Since 1999 the two firms, and their predecessors, have
had a symbiotic relationship whereby Villari depends on CLS to
fund its advertisements and to generate cases, and CLS depends on
Villari to win judgments and to provide CLS with a source of
revenue.  On June 16, 2006, CLS entered into a loan agreement
with Plainfield[2] in which it borrowed $15 million to fund its
advertising expenses (the "Loan Agreement").  As collateral for
the loan, Plainfield apparently acquired and perfected a first
priority security interest in CLS's personal property.

When CLS's predecessor went into bankruptcy, Villari
chose to enter into a new agreement with CLS rather than purchase
the 4MyChild intellectual property.  On December 27, 2004,
Villari and CLS signed a written agreement (the "Villari-CLS
Agreement") under which CLS agreed to refer to Villari worthy
cases originating in Pennsylvania, New Jersey, and Washington
D.C., and Villari pledged to share with CLS any fees it obtained
in connection with those cases on a 60%-40% basis.  As part of
the Villari-CLS Agreement, the two firms established a joint
venture called Villari Brandes, Kline & Stern, L.L.C. (the
"Villari-CLS Joint Venture").  The Villari-CLS Agreement was
modified and supplemented during the period in which CLS was
negotiating its loan from Plainfield.  One of the enduring terms

---

2.  The original lender was Plainfield Offshore Holdings XI, Inc.
That company transferred and assigned all of its rights and
obligations under the Loan Agreement to Plainfield Offshore
Holdings X Inc., which in turn transferred and assigned its
rights and obligations to Plainfield Specialty Holdings II Inc.

was a dispute resolution clause that provided for mediation and arbitration in Pennsylvania.  <u>See</u> Am. Agreement of May 29, 2007, § 29; Agreement of Dec. 27, 2004, § 29.

Three different disputes have evolved from the Villari-CLS Agreement and the Plainfield-CLS Loan Agreement:  Plainfield sued CLS for default in Michigan; Villari brought CLS to arbitration in Pennsylvania; and, in the present action, Villari sued Plainfield for damages for breach of contract and tortious conduct and is also seeking injunctive relief.

Initially, Plainfield[3] sued CLS in the United States District Court for the Eastern District of Michigan on November 24, 2008 for defaulting under the terms of the Loan Agreement (the "Michigan action").  <u>See</u> Complaint, <u>Plainfield Specialty Holdings II Inc. v. Children's Legal Servs. PLLC</u>, No. 08-14905 (E.D. Mich. Nov. 24, 2008) (hereinafter "<u>Plainfield v. CLS</u>").  Plainfield alleges in its complaint that all referral fees due to CLS under the Villari-CLS Agreement are part of the collateral owed to Plainfield and that CLS is improperly withholding or concealing them.  Plainfield claims in Count I for breach of contract in excess of $20 million in damages for CLS's failure to pay the amounts due under the Loan Agreement.  In Count II, entitled "Claim and Delivery," Plainfield seeks to recover fees paid to CLS through its referral agreements with various law firms, including Villari.  To that end, Plainfield

---

3.  Of the multiple Plainfield entities only Plainfield Specialty Holdings II Inc. is a party to the Michigan action.

requests an order directing CLS to (1) show cause "why possession
of the Collateral should not be delivered to Plaintiff (or in the
alternative, to a custodian) pending final disposition of this
action," and (2) "immediately turn over to Plaintiff or its
designees, including but not limited to, any custodian appointed
pursuant to Count III, all Collateral, and authorizing Plaintiff
to dispose of the Collateral according to the Uniform Commercial
Code." Complaint at 13, <u>Plainfield v. CLS</u>. Plainfield's Count
III requests, pursuant to the terms of the Loan Agreement, the
appointment of a custodian to protect its interests in the
collateral. Finally, in Count IV Plainfield seeks foreclosure
and a judgment <u>in rem</u> in the amount of $20,528,897 plus interest.

The court in the Michigan action initially denied the
motion of Plainfield to appoint a custodian to oversee Villari's
payment of fees to CLS. <u>See</u> Order of Dec. 19, 2008, <u>Plainfield
v. CLS</u>. However, after a two-day evidentiary hearing, the court
granted Plainfield's request for a preliminary injunction in
April, 2009. The order provided:

> • Defendants shall immediately, and
> continually as required to effectuate
> the result contemplated by the Court's
> order, deposit all funds in which it has
> an interest (including without
> limitation any joint venture account
> with any Villari, Brandes & Kline, P.C.
> ("Villari") affiliate or affiliate of
> McKeen & Associates ("McKeen") or
> otherwise) in to [sic] the "lockbox"
> account and shall not use or disburse
> any such funds except as provided for
> herein.

-5-

- Defendants shall immediately notify all
  third parties, including Villari and
  McKeen, that hold funds in which
  Defendants hold or may hold an interest,
  whether contingent or not, in writing,
  demanding each of them transfer such
  funds to the CLS lockbox account and
  otherwise not disburse any of the funds.

- [Person to be determined] shall be, and
  hereby is, appointed custodian for CLS
  with the powers as set forth in Schedule
  A attached hereto.

Order of Apr. 28, 2009, at 4, <u>Plainfield v. CLS</u>.  The order also included extensive findings of fact.

Based on further discovery and the court's factual findings, Plainfield moved on June 1, 2009 to amend its complaint to add additional counts against Stern and to add Villari and the Villari-CLS Joint Venture as defendants.[4]  In the amended complaint, which CLS has answered, Plainfield alleges that Stern, CLS, Villari, and the Villari-CLS Joint Venture have engaged in various behaviors to hide or divert case proceeds in order to defraud Plainfield of its collateral.  Based on these new factual allegations, Plainfield adds claims for breach of contract, common law conversion, statutory conversion under Michigan Compiled Laws § 600.2919a, unjust enrichment, constructive trust,

---

4.  Although we see no entry on the court's docket granting Plainfield's motion, we observe that Plainfield filed its amended complaint on June 8, 2009.  Plainfield reports in its reply brief in support of its motion to transfer venue that the court in Michigan granted it permission to file its amended complaint at a conference on June 8, and we have confirmed the existence of such a conference on the court docket.  <u>See</u> Defs.' Reply Br. at 9.  We also note that CLS answered the amended complaint on June 22, 2009.  Thus, we proceed on the assumption that Plainfield properly amended its complaint on June 8, 2009.

conspiracy, and tortious interference.  Plainfield also seeks a
declaratory judgment that it owes no duties to Villari or the
Villari-CLS Joint Venture under the Loan Agreement or otherwise.

On June 3, 2009, two days after Plainfield moved to
amend its complaint in the Michigan action, Villari invoked the
dispute resolution clause of the Villari-CLS Agreement to resolve
its quarrel with CLS concerning CLS's failure to fund certain
advertisements.  According to Villari, CLS admits that it failed
to fund the advertisements in Villari's territory but has
informed Villari that it is unable to meet its advertising
obligations because Plainfield failed to provide sufficient
funds.  Villari and CLS have selected their respective
arbitrators, and the arbitration appears to be moving forward in
Pennsylvania.

Finally we come to the instant action.  On June 5,
2009, four days after Plainfield filed its motion to amend in the
Michigan action, Villari filed this lawsuit against Plainfield in
the Eastern District of Pennsylvania.  While there is no written
agreement between Villari and Plainfield, Villari contends that
Plainfield made an oral promise and repeated reassurances to
Villari that it would provide long-term funding of CLS's
advertising if Villari committed to remain in a referral
arrangement with CLS.  According to the complaint, Villari agreed
to forgo certain rights it had enjoyed under the Villari-CLS
Agreement based on these representations in a letter dated
June 2, 2006.  For instance, Villari states it waived its

-7-

national right of first refusal in the event CLS expanded its
marketing activities into other areas.  Villari complains that
Plainfield, in the Michigan action, is unfairly attempting to
take advantage of the rights Villari gave up in reliance on
Plainfield's oral promises.  It alleges that Plainfield tried to
"drive a wedge" between Villari and CLS so that CLS would default
on its loan and Plainfield could acquire its property, including
the 4MyChild trademark.  In its brief in support of the motion to
transfer venue Plainfield contends, and Villari does not deny,
that Villari brought the instant lawsuit in response to
Plainfield's proposed amended complaint in the Michigan action.

     The concerns of Villari motivating this lawsuit are
best summarized in its complaint:

> [Plainfield] seeks a determination by the
> Michigan Court of the very issues that are to
> be decided by the Arbitration as provided in
> the Dispute Resolution procedures set forth
> in the [Villari-CLS] Agreement.  It takes
> this position even though Plainfield insisted
> that Villari and CLS execute the [Villari-
> CLS] Agreement, inclusive of the Dispute
> Resolution Procedure, as a condition of
> Plainfield's now-violated commitment to
> provide the funding previously described.
>     ... [Plainfield] is attempting to
> effectuate this "end run" by claiming that as
> CLS's creditor, it is entitled to obtain that
> which CLS is entitled to obtain pursuant to
> the [Villari-CLS] Agreement, and it is asking
> the Michigan Court to make that
> determination.  However, the question of what
> CLS is entitled to obtain pursuant to the
> [Villari-CLS] Agreement is to be determined
> in Arbitration.

Compl. at 16.  Villari maintains that Plainfield's amended
complaint necessarily requires a determination of many of the
same issues that Villari and CLS are arbitrating in Pennsylvania.

      The first four counts of Villari's complaint are for
(1) fraud and negligent misrepresentation, (2) breach of contract
and promissory estoppel, (3) tortious interference with
contractual relations, and (4) defamation and trade libel.  Count
V, for a declaratory judgment and preliminary injunctive relief,
appears to be the heart of Villari's complaint.  In Count V
Villari asks the court to restrain Plainfield from:

      a. Adjudicating issues pertaining to the
fees to which CLS may be entitled under the
December 27, 2004 Agreement and/or the
Amended Agreement [between Villari and CLS],
if any, instead of deferring to and being
bound by the determinations of the
Arbitrators respecting such issues;
      b. Adjudicating issues pertaining to
Villari's national right of first refusal and
exclusivity rights pertaining to the 4MyChild
program under the December 27, 2004 Agreement
and/or the Amended Agreement, instead of
deferring to and being bound by the
determinations of the Arbitrators respecting
such issues;
      c. Adjudicating issues pertaining to
Villari's right to purchase the 4MyChild
intellectual property from CLS for $50,000 as
provided for in the December 27, 2004
Agreement and/or the Amended Agreement,
instead of deferring to and being bound by
the determinations of the Arbitrators
respecting such issues;
      d. Compromising and/or interfering with
Villari's right to the fees generated from
the cases Villari has handled, is handling,
and may handle in the future;
      e. Compromising and/or interfering with
Villari's national right of first refusal and
exclusivity rights pertaining to the 4MyChild

          program and Villari's right to purchase the
          4MyChild intellectual property from CLS.

Compl. at 21-22.

II.

      Plainfield argues that this case should be transferred to the Eastern District of Michigan in the interest of justice so that it may be consolidated, or at least coordinated, with its action there.

      Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Because both sections permit us to transfer a case in the interest of justice, we begin our analysis there, rather than with the motion to dismiss.  We also note that counsel for Villari conceded in a telephone conference with the court on June 15, 2009 that venue is proper in the Eastern District of Michigan.  See 28 U.S.C. § 1391.

      Our Court of Appeals in Jumara v. State Farm Insurance Co. articulated a multi-factored balancing test that we apply

-10-

when ruling on a motion to transfer venue.[5]  55 F.3d at 879-80.
One of the factors is the "practical considerations that could
make the trial easy, expeditious, or inexpensive."  Id.  These
considerations are in accord with United States Supreme Court
instructions that make "quite clear" that "[t]o permit a
situation in which two cases involving precisely the same issues
are simultaneously pending in different District Courts leads to
the wastefulness of time, energy and money that § 1404(a) was
designed to prevent."  Ferens v. John Deere Co., 494 U.S. 516,
531 (1990) (quoting Continental Grain Co. v. Barge FBL-585, 364
U.S. 19, 26 (1960)).

While the Supreme Court has addressed only the question
of cases involving "precisely the same issues," courts in our
district have held that where there is a strong likelihood of
consolidation with a related action, a transfer of venue is
warranted.  See, e.g., Prudential Ins. Co. of Am. v. Rodano, 493

_____

5.  The twelve Jumara factors include:  (1) "plaintiff's forum
preference as manifested in the original choice," (2) "the
defendant's preference," (3) "whether the claim arose elsewhere,"
(4) "the convenience of the parties as indicated by their
relative physical and financial condition," (5) "the convenience
of the witnesses-but only to the extent that the witnesses may
actually be unavailable for trial in one of the fora," (6) "the
location of books and records (similarly limited to the extent
that the files could not be produced in the alternative forum),"
(7) "the enforceability of the judgment," (8) "practical
considerations that could make the trial easy, expeditious, or
inexpensive," (9) "the relative administrative difficulty in the
two fora resulting from court congestion," (10) "the local
interest in deciding local controversies at home," (11) "the
public policies of the fora," and (12) "the familiarity of the
trial judge with the applicable state law in diversity cases."
55 F.3d at 879-80.

F. Supp. 954, 955 (E.D. Pa. 1980); <u>Maxlow v. Leighton</u>, 325 F.
Supp. 913, 915-17 (E.D. Pa. 1971).  In fact, the presence of a
related action in the transferee forum is such a powerful reason
to grant a transfer that courts do so even where other <u>Jumara</u>
factors, such as the convenience of parties and witnesses, would
suggest the opposite.  <u>Weber v. Basic Comfort Inc.</u>, 155 F. Supp.
2d 283, 286 (E.D. Pa. 2001); <u>Travelers Indem. Co. v. E.F. Corp.</u>,
No. 95-5660, 1997 WL 135819, at *8 (E.D. Pa. Mar. 17, 1997)
(collecting cases).  We also take guidance from Rule 1 of the
Federal Rules of Civil Procedure, which dictates that the Rules
"should be construed and administered to secure the just, speedy,
and inexpensive determination of every action and proceeding."
Fed. R. Civ. P. 1.

        Based on the foregoing, we conclude that the existence
of a related action in another district is a sound reason for
favoring transfer when venue is proper there, even though the
transfer conflicts with the plaintiff's choice of forum.  <u>See</u>
<u>Ferens</u>, 494 U.S. at 531; <u>Burger King Corp. v. Stroehmann</u>
<u>Bakeries, Inc.</u>, 929 F. Supp. 892, 895 n.2 (E.D. Pa. 1996);
<u>Simmens v. Coca Cola Co.</u>, No. 07-668, 2007 WL 2007977, at *2
(E.D. Pa. July 5, 2007) (collecting cases).  We must therefore
determine whether the matter before us involves issues and
parties sufficiently similar to those in the Michigan action to
warrant a change of venue.

        We find it almost impossible to extricate the claims
Villari brings against Plainfield from Villari's and Plainfield's

-12-

respective disputes with CLS.  We cannot agree with Villari's
characterization of this case as having "nothing to do with
Plainfield's efforts to collect money it loaned to its customer,
Children's Legal Services."  Pl.'s Opp'n Br. at 3.  Under the
Loan Agreement, Plainfield asserts a security interest in fees
owed to CLS, and Villari is asking this court to enjoin
Plainfield from "[a]djudicating issues pertaining to the fees to
which CLS may be entitled."  Compl. at 21.  It is totally
illogical to suggest that the instant lawsuit is not related to
the Michigan action when Villari admits that it filed one to stop
the other.  Thus, the existence of the related Michigan action
weighs heavily in favor of transfer, which would enable the two
cases to be disposed of in the most expeditious and inexpensive
manner possible.

        The first-filed rule also bears on our analysis.  "The
first-filed rule encourages sound judicial administration and
promotes comity among federal courts of equal rank.  It gives a
court 'the power' to enjoin the subsequent prosecution of
proceedings involving the same parties and the same issues
already before another district court."  E.E.O.C. v. Univ. of
Pa., 850 F.2d 969, 971 (3d Cir. 1988); see Crosley Corp. v.
Hazeltine Corp., 122 F.2d 925, 929-30 (3d Cir. 1941).  The
applicability of the first-filed rule is not limited to mirror
image cases where the parties and the issues perfectly align.
Rather, the principles underlying the rule support its
application where the subject matter of the later filed case

-13-

substantially overlaps with that of the earlier one.  The
"substantive touchstone of the first-to-file inquiry is subject
matter."  Shire U.S., Inc. v. Johnson Matthey, Inc., 543 F. Supp.
2d 404, 409 (E.D. Pa. 2008).  If the rule were otherwise, it
would encourage parties in Villari's position to forum shop and
bring lawsuits involving closely related issues in a court other
than the one where a first action is pending.  See Advanta Corp.
v. Visa U.S.A., Inc., No. 96-7940, 1997 WL 88906, at * 3 (E.D.
Pa. Feb. 19, 1997).

          We need look no further than Villari's brief in
opposition to the motion to transfer venue to conclude that the
two actions share a similar subject matter:  "Villari's Complaint
and Plainfield's Michigan First Amended Complaint involve
precisely the same issue.  In all other respects, Villari's
Complaint and Plainfield's Michigan First Amended Complaint are
two sides of the same coin."  Pl.'s Opp'n Br. at 20.
Nevertheless, Villari argues that the first-filed rule compels us
to deny the motion to transfer venue because this court was the
first to obtain jurisdiction over the subject matter of the case
at bar.  Villari contends that the cases did not become related
until Plainfield proposed its amended complaint.  To defeat the
motion to transfer it relies on the fact it filed a complaint in
this action before Plainfield received leave to file its amended
complaint in the Michigan action.  This kind of "race to the
courthouse" tactic by Villari is exactly what the first-filed and

venue transfer rules were designed to prevent.  <u>Blender v.</u>
<u>Sibley</u>, 396 F. Supp. 300, 305 n.14 (E.D. Pa. 1975).

       Moreover, we do not agree with Villari that the subject
matter of the two lawsuits became related only by virtue of
Plainfield's amended complaint.  The two-day evidentiary hearing
in February in the Michigan action resulted in extensive findings
of fact and a preliminary injunction.  <u>See</u> Order of April 28,
2009, <u>Plainfield v. CLS</u>.  Several of the findings are directly
related to the subject matter of the case before us.  For example
the court in Michigan reviewed the Villari-CLS Agreement and
determined that Villari's treatment of certain fees was
inconsistent with the terms of that agreement.  <u>Id.</u> at 14-15.
The court's order appointed a custodian to, among other things:

> determine if CLS, Stern or any affiliate of
> either of them is causing or attempting to
> cause funds that are payable to CLS or should
> be payable to CLS under any Primary Law Firm
> agreement ... with CLS to be diverted,
> offset, compromised, deposited in any account
> other than the Defendant Accounts ... or
> otherwise transferred so as to result in less
> than payment in full when due to CLS of all
> sums due and owing under such Primary Law
> Firm Agreement.

<u>Id.</u> at 31.  The custodian was also ordered to "determine if any
of Plaintiff's Collateral has been dissipated in any way or
transferred to any party other than Plaintiff," such as Villari.
<u>Id.</u>

       In order for us to rule on Villari's requested
declaratory and injunctive relief we would need to revisit at
least some of the issues that Judge Edmunds had before her at the

-15-

hearing in February.  Thus, even ignoring Plainfield's amended complaint, the subject matter of the Michigan action and the lawsuit before us involve closely related issues.[6]  The Michigan action was filed seven months ago and has been moving forward since that time.  In the interest of justice and judicial economy we are persuaded to transfer Villari's action against Plainfield to the Eastern District of Michigan.

As a final matter, Villari contends that a transfer of venue would leave it without a remedy.  It maintains that only a court sitting in Pennsylvania can stop Plainfield from interfering with the ongoing arbitration between Villari and CLS.  Section 29 of the Villari-CLS Agreement provides that arbitration between the parties is to take place in Montgomery County, Pennsylvania.  Villari cites a case in which the Sixth Circuit held:  "We agree with the majority of courts that have recognized that, where the parties have agreed to arbitrate in a particular forum, only a district court in that forum has jurisdiction to compel arbitration pursuant to Section 4 [of the Federal Arbitration Act]."  Mgmt. Recruiters Int'l, Inc. v. Bloor, 129 F.3d 851, 854 (6th Cir. 1997).  Based on that holding, Villari argues that only a district court in Pennsylvania has authority to compel arbitration and that it will therefore lose an opportunity for relief if this case is transferred to Michigan.

---

6.  While we recognize that Counts I and II of Villari's complaint (for fraud and breach of contract) alone might not create a substantial overlap of subject matter with the Michigan action, Villari's other three counts clearly do.

-16-

Villari misses the mark, for its complaint does not request an order compelling arbitration.  Indeed, the arbitration between Villari and CLS is already underway.  Thus, <u>Bloor</u> is inapposite.

We have carefully considered each of the <u>Jumara</u> factors in light of the present circumstances.  None in our view, either separately or together, warrants the court to retain this action here.  No one has argued, for example, that the attendance of the parties would be inconvenient in Michigan based on physical or financial conditions or that witnesses or evidence would be unavailable if a transfer takes place.  While the plaintiff's choice of venue "should not be lightly disturbed," it is never controlling and certainly not under the compelling situation presented here.  <u>Jumara</u>, 55 F.3d at 879.  In sum, the Plainfield defendants have clearly met their burden to demonstrate that this action should be transferred the United States District Court for the Eastern District of Michigan.  We need not decide whether venue is proper here, since the transfer is compelled in the interest of justice under either 28 U.S.C. § 1404(a) or § 1406(a).[7]

_____

7. Even if venue were improper, it would not be in the interest of justice to dismiss this action under 28 U.S.C. § 1406.